Plaintiff appeals Deputy Commissioner Dillard's conclusion that the compensable injury did not cause or contribute to his totally disabling congestive heart failure.
Plaintiff's and defendants' respective positions are fully supported by the divergent opinions of Dr. Mangano, plaintiff's treating cardiologist, and Dr. Weeks, a cardiologist who reviewed plaintiff's medical records at defendants' request. When he was deposed, Dr. Mangano felt Dr. Weeks' opinion might be affected by the results of a 2-D echocardiogram and a treadmill test, and further knowledge of plaintiff's "psychosocial stresses . . . during the summer of `89, including his loss of income, his wife's loss of income and loss of self-esteem . . . and loss of job", but Dr. Weeks had reviewed Dr. Mangano's deposition by the time of his own two months later. Dr. Mangano felt that plaintiff's inactivity during convalescence contributed to weight gain and hypertension and "psychological factors caus[ing] hormonal changes, the catecholamine changes, stress, depression, caus[ing] extra stimulation of the heart." Both doctors agreed that weight gain could be both a cause and an effect of congestive heart failure, but Dr. Weeks felt that an increase due to fluid, rather than tissue, would not be a causative factor, and doubted that a 20-pound weight gain would have caused the problem in the plaintiff. Dr. Mangano testified that a 10 or 15 pound weight gain might not have affected him had he been physically active, but as little as three pounds of additional tissue could have played a role in the development of plaintiff's condition, when combined with "his inactivity and life stresses." Dr. Mangano made more direct references to medical literature, but there is no clear indication in the record that one physician was any less versed in scientific knowledge concerning the problem than the other.
Finally, our choice between scientific opinions is influenced by the common sense implication of the sequence of events. As Dr. Mangano put it, "He was stable without symptoms of shortness of breath or disability until the accident. Something happened to the dynamic state of compensation of his heart condition between May and September to lead him to develop severe biventricular failure. Now, the temporal relationship to me is irresistible." Such "temporal relationships" between accidents and injuries have probative force in law as well as science — to the extent of allowing a finding of causation without expert medical evidence in simpler cases. Tickle v. Insulating Company, 8 N.C. App. 5,173 S.E.2d 491 (1970); Gillikin v. Burrage, 263 N.C. 317, 325,139 S.E.2d 753 (1965); Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 169, 265 S.E.2d 389 (1980).
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission REVERSES the Opinion and Award reviewed, and makes the following findings, conclusions and award.
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and defendant-employer.
3. Granite State Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage on May 2, 1989 was $470.00.
5. The date of the plaintiff's compensable motor vehicle accident was May 2, 1989.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff, who was 53 years old at the time of the hearing, had a tenth-grade education and had worked for defendant-employer as a welder on several occasions, most recently beginning on November 1, 1988.
2. On or about May 2, 1989, plaintiff sustained an injury by accident arising out of and in the course of his employment when he was driving a truck from defendant-employer's Franklin, Virginia job site.
3. Plaintiff was initially treated for injuries sustained in the automobile accident at Roanoke Chowan Hospital where he was admitted to the emergency room and transferred to Nash County General Hospital by ambulance. Upon his admission at Nash County General Hospital, plaintiff was x-rayed and on May 8, 1989 underwent an open reduction and internal fixation, with compression plates, screw, and wires, of a comminuted fracture in his right forearm. The surgery was performed by Dr. A.H. Marsigli, Jr., orthopaedic surgeon of Rocky Mount. Plaintiff also sustained a fracture to his left arm and some facial trauma, neither of which required surgery or substantial medical treatment subsequent to plaintiff's discharge from Nash County General Hospital.
4. Plaintiff was discharged from Nash County General Hospital on May 13, 1989, with immobilizing casts on both arms and his right leg. He continued to see Dr. Marsigli on an intermittent basis. The condition of plaintiff's orthopedic injuries improved under Dr. Marsigli's care.
5. Following discharge from the hospital, plaintiff began having increasing shortness of breath which gradually worsened over the next few months, particularly when plaintiff would exert himself. On September 1, 1989, plaintiff was admitted to Nash County General Hospital by Dr. John Bryant. His weight had increased during convalescence from the auto accident from 259 pounds to 276 pounds when hospitalized on September 1, 1989. (Tr. Exh. pp. 11 and 183.) Plaintiff was diagnosed as having congestive heart failure and cardiac arrhythmia and was "diuresed" of what plaintiff said was "about 20 pounds." Plaintiff was transferred to Wake Medical Center where he was treated by Dr. G. Ray Cheely and Dr. Charles Mangano, both of whom practice as cardiologists in Raleigh. Dr. Mangano and Dr. Bryant have both continued to treat plaintiff for his heart condition.
6. Plaintiff reached maximum medical improvement from his orthopedic injuries on March 20, 1990. On April 12, 1990, Dr. Marsigli assigned plaintiff a 15% permanent partial disability rating to his left hand and a 40% permanent partial disability rating to his right hand.
7. Plaintiff's permanent orthopedic injuries do not prevent him from engaging in unrestricted work with his left hand and work with his right hand not involving lifting more than 20 to 25 pounds. In addition, although plaintiff's orthopedic injuries restrict him from work which involves a lot of manipulation, they do not prevent him from climbing stairs, bending at the waist to the knees, stooping, squatting, sitting, standing and walking.
8. On July 23, 1990, plaintiff was offered a position with defendant-employer as a night watchman for 40 hours per week, earning $12.00 an hour. Plaintiff's orthopedic injuries do not disable him from working in that position. Plaintiff declined it on the advice of Dr. Mangano that his heart condition alone was such that he should not accept that position. The night watchman position is an authentic job, available in the job market, although defendant did not actually hire for their alleged position after plaintiff declined it. However, the $12.00 per hour offered was an accommodation to the plaintiff, who had earned $11.75 at the time of his injury, and the record does not reflect the wages normally earned in such positions. Plaintiff did not undertake a job search after recovering from his orthopaedic injuries because it would have been futile due to his heart condition.
9. Plaintiff had hypertensive heart disease prior to his May 2, 1989 accident, but it did not inhibit him from carrying out the physical demands of his employment activities or affect his wage earning capacity. As Dr. Mangano testified, plaintiff's weight gain, stress due to disability and lack of income, and associated psychosocial factors attributable to the inactivity caused by the automobile accident combined to aggravate and accelerate plaintiff's pre-existing hypertensive heart disease, resulting in plaintiff's heart failure. By and since September 1, 1989, plaintiff was rendered totally disabled by his heart condition.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On May 2, 1989, plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C.G.S. § 97-2(6).
2. Plaintiff's injuries sustained on May 2, 1989 exacerbated his pre-existing, non-work related heart condition and precipitated his congestive heart failure. Consequently, plaintiff is entitled to benefits during the resulting period of total disability. N.C.G.S. § 97-29; Wyatt v. Sharp, 239 N.C. 655,80 S.E.2d 762 (1954).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to plaintiff compensation benefits for total disability in the amount of $313.34 per week from May 2, 1989 through the date of the hearing before Deputy Commissioner Dillard, and continuing until further orders of the Commission, with credit for compensation previously paid, subject to the attorney fee hereinafter approved. Compensation accrued and unpaid shall be paid in lump sum.
2. Defendants shall pay all medical expenses incurred by the plaintiff as a result of the injury by accident giving rise hereto when bills for the same have been submitted through the defendant-carrier to the Industrial Commission and approved by the Commission. Defendants shall pay for such future medical expenses as will be required to give relief, effect a cure, or lessen the period of plaintiff's disability with respect to the injuries to his right arm.
3. A reasonable attorney fee of 25% of the compensation awarded to plaintiff is approved for plaintiff's counsel. Said amount shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 S/ ______________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________ JAMES J. BOOKER COMMISSIONER
JRW/tmd 12/13/94